IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No.  03-cv-02372-PSF-PAC

JACK BARRECA,

    Plaintiff,

v.

SOUTH BEACH BEVERAGE CO., INC.,
LOTTE U.S.A, and
7-ELEVEN, INC.,

    Defendants.

---

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
OF VALIDITY OF THE '839 PATENT**

---

THIS MATTER comes before the Court on plaintiff's Motion for Summary Judgment of Validity of the '839 Patent (Dkt. # 23), filed April 15, 2005.  In his motion, plaintiff requests the Court to enter an order holding that his U.S. Patent No. 6,652,839 (the '839 patent) is valid, and in effect rejecting as a matter of law the affirmative defenses of invalidity asserted by defendants in their answers to the complaint (Plaintiff's Motion at 1-2).

In a joint response, the defendants argue that their affirmative defenses of "invalidity," based as they are on the assertion that plaintiff's patent is invalid because it is rendered obvious by prior art, or alternatively is invalid because the claimed invention does not meet the conditions of patentability specified by 35 U.S.C. §§ 102, 103 and/or 112, at a minimum depend on disputed issues of material fact that can not be resolved on a motion for summary judgment (Defendants' Response filed August 4,

2004). Defendants have not cross-moved for summary judgment seeking a declaration of invalidity, nor have they filed counterclaims alleging invalidity of the '839 patent.

On August 9, 2004, plaintiff filed a reply brief in support of his motion. On November 9, 2004, plaintiff filed a motion for leave to file a supplemental brief on (Dkt. # 45) together with the proposed supplemental brief. Plaintiff's Motion for Leave to File a Supplemental Brief is GRANTED.

**BACKGROUND**

The background of this multi-patent, multi-lawsuit dispute between plaintiff and the three defendants over plaintiff's different patents for center-filled gum products is set forth in this Court's August 9, 2005 Order on Motions for Summary Judgment and Denying Markman Hearing, 2005 WL 1899365 (D. Colo., Aug. 9, 2005), in its Order on Claims Construction--Markman Hearing entered in the related case, Civil Action No. 02-F-2303, on June 16, 2004, reported at *Barreca v. South Beach Beverage Co.*, 322 F. Supp. 2d 1186 (D. Colo. 2004), and in its Order on Pending Motions, entered in the related case on September 7, 2004. The latter two orders were affirmed by the Federal Circuit on August 17, 2005, *see Barreca v. South Beach Beverage Co., Inc.*, 141 Fed. Appx. 912 (Fed. Cir., Aug 17, 2005). Accordingly, that background will not be repeated here.

**PLAINTIFF'S MOTION**

As indicated, plaintiff's motion does not seek summary judgment on any claim asserted by plaintiff. Nor does it seek summary judgment on any counterclaim asserted by defendants. Rather, at most it appears to be a request to dispose of affirmative defenses asserted by defendants to plaintiff's claims of patent infringement.

Rule 56(a), F.R.Civ.P., provides that a party asserting a claim may move for summary judgment upon all or any part of a claim. The rule does provide for summary judgment on an affirmative defense. Thus plaintiff's motion may not be properly filed under Rule 56. Nonetheless, for the reasons set forth below, the Court addresses plaintiff's assertions regarding the two separate affirmative defenses.

**A.     Invalidity Due to Obviousness Under 35 U.S.C. §§ 102 and 103**

Plaintiff first contends that defendants cannot carry the significant burden of overcoming the presumption of validity that attaches to an issued patent, such as the '839 patent, as they have not presented clear and convincing evidence that the invention was obvious. In his motion, plaintiff assumes that the "foundation for the prior art invalidity allegations is the 1982 unexamined Japanese patent application to Sato et al." (Plaintiff's Motion at 5). Plaintiff argues that the "prior art" submitted by defendants does not anticipate or render obvious the claims of the '839 patent.

In response to plaintiff's motion the defendants submitted, among other things, a declaration of Douglas P. Fritz, who is offered as a technical expert on chewing gum, and as one who has at least ordinary skill in the art. Mr. Fritz opines that at least claim 1 of the plaintiff's '839 patent is obvious in light of several patents and other sources attached to his declaration, in addition to the Sato *et al.* unexamined patent referenced by plaintiff in his motion (*see* Exhibit A to Defendants' Response, Fritz Declaration at ¶ 4, and Exhibits B through J thereto).

Plaintiff replies that many of the additional sources in the Fritz Declaration were made known to the Patent Office at the time the '839 patent was approved, that these references do not provide the requisite motivation and suggestion necessary to make

3

the combination of elements that would produce claim 1 of the '839 patent, and therefore defendants have failed to meet their burden (Plaintiff's Reply at 2). Plaintiff further argues in his supplemental response that the Patent Office's grant of a continuation patent directly related to the '839 patent is further support for his position of non-obviousness.

In this Court's Order in the related case involving plaintiff's '540 patent, the Court denied defendants' motion for summary judgment arguing invalidity based on obviousness of the '540 patent, stating:

> As the Federal Circuit has stated:
>
> Invalidity based on obviousness is a question of law based on underlying facts (Citations omitted). The relevant facts relate to (1) the scope and content of the prior art, (2) the level of ordinary skill in the field of the invention, (3) the differences between the claimed invention and the prior art, and (4) any objective evidence of nonobviousness such as long felt need, commercial success, the failure of others, or copying. (Citations omitted.)
>
> *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340, 1351 (Fed. Cir. 1998).
>
> Although obviousness is a question of law that this Court ultimately must decide, when there are disputed issues of relevant facts, summary judgment may not be entered.

Order of September 7, 2004 at 17-18.

Here again, the Court finds that there are disputed issues of fact regarding whether the prior art identified by defendants renders obvious the plaintiff's '839 patent. Therefore, even if plaintiff's motion were properly filed under Rule 56, plaintiff's motion for summary judgment cannot be granted as to the issue of validity on the grounds that

defendants have failed as a matter of law to come forward with clear and convincing evidence of obviousness.

**B.     Invalidity Under 35 U.S.C. § 112**

Title 35 U.S.C. § 112, ¶ 1, provides, in part, as follows with respect to the requirements for a patent of an invention:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

This section sets forth three distinct requirements for a patent specification: (1) it must contain a "written description" of the claimed invention; (2) it must contain a written description of the manner and process of making and using the invention in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the invention; and (3) it must set forth the best mode contemplated by the inventor of carrying out his invention. *See e.g. University of Rochester v. G.D. Searle & Co., Inc.,* 358 F.3d 916, 921 (Fed. Cir. 2004). The first requirement, known as the written description requirement, serves a teaching function as a "*quid pro quo*" in which the public is given "meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time." *Id.* at 922.

The second requirement, generally known as the enablement requirement, is satisfied when the specification describes the claimed invention in such detail that one of skill in the art would be able to make and use the claimed invention without undue

5

experimentation. *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999). As the Federal Circuit held in *National Recovery Technologies, Inc., supra:*

> In order to satisfy the enablement requirement of § 112, paragraph 1, the specification must enable one of ordinary skill in the art to practice the claimed invention without undue experimentation. Thus, with respect to enablement the relevant inquiry lies in the relationship between the specification, the claims, and the knowledge of one of ordinary skill in the art. If, by following the steps set forth in the specification, one of ordinary skill in the art is not able to replicate the claimed invention without undue experimentation, the claim has not been enabled as required by § 112, paragraph 1.

163 F.3d at 1196.

The grant of the patent by the Patent and Trademark Office carries with it the presumption of validity including compliance with § 112. *Id.* at 1195; *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir.), *cert. denied*, 498 U.S. 920 (1990). And while invalidity of a patent for lack of enablement is a conclusion of law, the conclusion must be supported by facts proved by clear and convincing evidence. *National Recovery Technologies, Inc.*, *supra*, 166 F.3d at 1195. Nonetheless, where no genuine issues of material fact exist, a court can determine whether a specification satisfies the requirements of § 112. *Id.*

    1.    <u>Whether the term "metabolic enhancer" is sufficiently definite</u>

Anticipating defendants' argument for invalidity under this statute, plaintiff asserts in his motion that defendants may contend, as they did in the litigation involving the '540 patent, that the term "metabolic enhancer" as used in the '839 patent is somehow indefinite, rendering invalid at least some of the claims in the '839 patent

(Plaintiff's Motion at 7). Plaintiff asserts that the ordinary meaning of "metabolic enhancer" controls, and that the term was construed by this Court in the claims construction order in the related case according to its common understanding and plain meaning (*id.* at 7-8).

Consistent with plaintiff's expectation, defendants do argue in their response that the '839 patent does not satisfy the requirement of the second requirement of Section 112, because its disclosure in the patent of "an active ingredient that includes a 'metabolic enhancer'" does not identify what compounds are and are not to be included in plaintiff's definition of "metabolic enhancer." Accordingly, defendants urge, one skilled in the art "has no way of knowing whether another product potentially infringes the '839 patent." (Defendants' Response at 10-11).

Plaintiff replies that defendants' argument that the term "metabolic enhancer" is vague and indefinite is belied by defendants' admissions in discovery responses wherein they admit that certain products constitute metabolic enhancers (Plaintiff's Reply at 13). Plaintiff further argues that this Court construed the term "metabolic enhancer" in the Claims Construction Order in the related case "and did not find that it lacked definiteness." *Id.*

The Claims Construction Order in the related case did address the question of whether the phrase "metabolic enhancers" must be read in the plural, so as to require the presence of at least two metabolic enhancers. *See* 322 F. Supp. 2d at 1194-95. The Order, however, did not specifically state that the term "metabolic enhancer" is sufficiently definite to satisfy § 112, as that issue was not presented to the Court.

Nevertheless, in order to address the question of what metabolic enhancers were described in the '540 patent, the Court looked to the language of the claims

7

themselves. Those claims where such language was at issue in the related case, namely claims 14 and 22 of the '540 patent, each stated that the gum included "metabolic enhancers that increase a user's metabolism in order to achieve a higher caloric burn rate." Such language was sufficiently definite in the related case to permit resolution of the claims construction issue presented there. The Court notes that the claims at issue in the instant case, at least claims 1 and 9 of the '839 patent, use the identical language to modify and define the referenced term "metabolic enhancer."

Nonetheless, whether the phrase "metabolic enhancer" is sufficiently definite so as to put a person skilled in the art on notice of what is claimed in the '839 patent, so as to enable that person to make and use the claimed invention without undue experimentation, is a question of fact that cannot be determined on summary judgment based on this record.

Accordingly, plaintiff's Motion for Summary Judgment on Invalidity must be DENIED.

2.  Whether the '839 patent satisfies the enablement requirement

Having reviewed plaintiff's motion and the affirmative defenses asserted by defendants under Section 112, this Court is concerned as to whether the '839 patent meets the enabling requirements of the statutory section.

The Court perceives that the portions of the '839 patent that are intended to meet the three-pronged requirement of Section 112 are those sections in the patent headed "Summary of the Invention," "Brief Description of the Drawings," and "Detailed Description of the Preferred Embodiment," and Tables I and II contained within the latter section. *See* copy of '839 patent, Exhibit B to Complaint, at columns 3, 4 and 5.

The Court also notes that sections bearing the same headings, and the same Tables, appear in the '540 patent, attached to the Complaint as Exhibit A. The Court further notes that the above-referenced sections in the '839 patent, as well as the two Tables, are identical and verbatim to the same titled sections that appear in the '540 patent. To be sure, the enumerated claims 1 through 13 in the '839 patent (columns 5-8 of the '839 patent) are different from the enumerated claims in the '540 patent (columns 5-8 of the '540 patent). But the narrative summaries, descriptions of the drawings, and the descriptions of the preferred embodiment are identical to each other, with the exception of the lack of a paragraph break in the first long paragraph of the Summary in the '839 patent. *See* Exhibit B to Complaint, column 3. To the Court, it appears as the drafter of the '839 patent merely "cut and pasted" the verbiage from the '540 patent into the '839 patent.

That being the case, this Court would infer that a person of ordinary skill in the art, if he or she followed the description contained in the '839 patent, would produce the same product described in the '540 patent, and would **not** be able to make and use the claimed invention of the '839 patent without undue experimentation.

In construing the '540 patent, this Court concluded that a plain reading of the four claims at issue there described a gum product with a liquid center-fill, or semi-liquid center-fill, placed in the center cavity at the time of manufacture and containing the different active ingredients, or combination of ingredients, listed in the claims. 322 F. Supp. 2d at 1192-93. The Court also found that there is no basis to interpret these claims of the '540 patent as containing active ingredients in the outer shell. *Id.* at 1193. In other words, plaintiff's '540 patent provided for a product where the active ingredients were found entirely in the liquid or semi-liquid center fill.

In subsequently granting summary judgment of non-infringement for defendants in the related case, the Court found that the evidence of record showed that the defendants' SoBe gum product, unlike plaintiff's patented product, contained the active ingredients in the gum shell itself, rather than in the liquid fill center, and therefore the SoBe product did not infringe the '540 patent. As noted, this Order was affirmed by the Federal Circuit

As the Court presently understands the '839 patent from a review of its claims, those claims provides for the active ingredients to be contained in the outer gum shell itself, rather than the liquid center. For example, every claim at issue from the '839 patent has at least the following language: "A chewing gum consisting essentially of a **first substance comprised of gum** configured so as to have at least one cavity capable of retaining a liquid or semi-liquid substance as a second substance, wherein **at least said first substance has active ingredients** consisting essentially of . . . ." *See* claims 1, 9 and 11 of '839 patent, Exhibit B to Complaint (emphasis added). These claims do not refer to an active ingredient being in the "cavity capable of retaining a liquid or semi-liquid substance as a second substance," nor do they refer to the active ingredient being found in the second substance itself.

Thus while the claims of the '839 patent claim an invention that contains active ingredients only in the outer gum shell, the description of the invention that appears in the specifications would apparently lead one skilled in the art to make a gum product similar to that claimed in the '540 patent where the active ingredients are contained in the interior of the gum in the liquid-fill center, and not what is claimed in the '839 patent, where the active ingredient is found in the gum substance itself. Such a description does not appear to the Court to meet the enabling requirement of § 112 that

the patent contain "a written description . . . of the manner and process of making and using it [the invention] in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the [invention]."

If the Court is correct, then a summary judgment under § 112 for invalidity may be required in this case. On the other hand, the Court may be misreading the '839 claims or may be misapprehending the basis for plaintiff's assertion that the written description requirement of § 112 has been met.

Accordingly, the parties shall submit simultaneous briefs of no more than ten pages to the Court **no later than October 28, 2005**, addressing the issue as to whether plaintiff's '839 patent meets the enabling requirements of § 112.

**CONCLUSION**

Plaintiff's Motion for Leave to File a Supplemental Brief (Dkt. # 45) is GRANTED.

Plaintiff's Motion for Summary Judgment of Validity of the '839 Patent (Dkt. # 23) is DENIED.

The parties are DIRECTED to file briefs as described above.

DATED: September 30, 2005

                                        BY THE COURT:

                                        s/ Phillip S. Figa
                                        _____
                                        Phillip S. Figa
                                        United States District Judge